## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CORLIVEETHO MCMILLIAN,** | : | **Civil No. 1:14-CV-1000** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **(Chief Judge Conner)** |
| | : | |
| **GARY HOLLINGER,** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **Defendants.** | : | |

## REPORT AND RECOMMENDATION

### I.    Statement of Facts and of the Case.

As a *pro se* litigant Corliveetho McMillian has a penchant for ignoring court orders, discounting deadlines, and failing to file pleadings. In McMillian's prior lawsuit, McMillian v. Walsh, Civil No. 1:11-CV-2223, he was frequently cited for these shortcomings and was repeatedly warned that the failure to follow court instructions could have adverse consequences for this litigant. Despite the plaintiff's repeated procedural failings, in the final analysis, however, McMillian's complaint in McMillian v. Walsh, Civil No. 1:11-CV-2223, failed for a much more fundamental reason: It was patently without merit.

Undeterred by this failure, McMillian has now filed the instant lawsuit which attempts to profit from his penchant for procedural tardiness. Ignoring his own failings, McMillian alleges that his prior lawsuit was dismissed because the clerk's office did not timely accept a single brief submitted by the plaintiff for filing. (Doc. 1.) On the

basis of this claim, which is thoroughly rebutted by the actual court record in McMillian v. Walsh, Civil No. 1:11-CV-2223, McMillian now sues the Acting Clerk of Court, Gary Hollinger, alleging that he was denied his right of access to the courts and seeking $500,000 in compensatory and punitive damages.(Id.)

Along with his complaint, McMillian has filed a motion for leave to proceed *in forma pauperis*. (Doc. 6.)  For the reasons set forth below, we will grant McMillian leave to proceed *in forma pauperis*, but as part of our legally-mandated screening review we find that the plaintiff has failed to state a claim upon which relief may be granted. Therefore, we recommend that the Court dismiss this complaint  for failure to state a claim upon which relief can be granted.

In considering the claims made in the instant lawsuit, it is necessary to also examine the court record in McMillian's prior case,  McMillian v. Walsh, Civil No. 1:11-CV-2223, since the plaintiff's claim against the Acting Clerk of Court in this case directly arises out of this prior lawsuit. In his current complaint, McMillian recites a fragmentary, incomplete, and inaccurate history of this prior litigation, reciting only that he had a November 2013 filing deadline in  McMillian v. Walsh, Civil No. 1:11-CV-2223 which he alleges he missed when the clerk's office refused to accept a prolix pleading for filing. (Doc. 1.)[1] Without further explanation, McMillian then attributes

---

[1]We note parenthetically that the docket in  McMillian v. Walsh, Civil No. 1:11-CV-2223 contains absolutely no reference to this attempted filing by

the failure of his claims in  McMillian v. Walsh, Civil No. 1:11-CV-2223 exclusively

to this clerical action, which he characterizes as a denial of his right of access to the

courts. (Id.)

The problem with this assertion is that it is simply, and completely, refuted by

the undisputed court record in  McMillian v. Walsh, Civil No. 1:11-CV-2223. In fact,

McMillian's complaint ignores both the prelude and the post script to this November

2013 episode, events which completely undermine his claims in the instant lawsuit.

By way of prelude, the docket in McMillian's prior lawsuit reveals that we had

been compelled to repeatedly cite McMillian for his wholesale failure to file briefs as

directed by the court. McMillian v. Walsh, Civil No. 1:11-CV-2223 (Docs. 128, 147.)

In September 2013, the defendants filed a summary judgment motion in  McMillian

v. Walsh, Civil No. 1:11-CV-2223. (Doc. 130.) On the eve of his deadline for

responding to this dispositive motion McMillian tried to avoid addressing the motion

by suggesting that he wished after years of litigation to further refine and amend his

complaint, (Doc. 138), a request which the court denied. (Doc. 139.) We then extended

the deadline for McMillian's response to the summary judgment motion for an

--------

McMillian in November 2013, casting grave doubt upon the veracity of this
assertion. However, for screening analysis purposes we accept as true this factual
averment.

additional month, to mid-November 2013.  McMillian v. Walsh, Civil No. 1:11-CV-2223 (Doc. 139.)

McMillian failed to meet this response deadline, but instead sought yet another two-week extension of time in which to respond to this dispositive motion.  McMillian v. Walsh, Civil No. 1:11-CV-2223 (Doc. 142.) We granted this request, providing McMillian with a third deadline for responding to this motion of November 27, 2013. McMillian v. Walsh, Civil No. 1:11-CV-2223 (Doc. 144.) When this deadline passed without any action by McMillian, we then waited three more weeks for a response or further request for additional time from McMillian. When no response or request for extension of time was forthcoming, on December 19, 2013 we filed a Report and Recommendation which recommended dismissal of McMillian's complaint. McMillian v. Walsh, Civil No. 1:11-CV-2223 (Doc. 149.) This Report and Recommendation noted McMillian's many procedural failings, but ultimately rested upon a more fundamental consideration. Our careful analysis of McMillian's legal claims in light of the uncontested evidence, which included a video of McMillian's cell extraction, revealed beyond any doubt that McMillian's claims were wholly frivolous and entirely lacking in merit. (Id.)

McMillian only stirred himself to action *after* this Report and Recommendation was filed, when on December 23, 2013, he belatedly filed a motion for extension of time in which to respond to this summary judgment motion. McMillian v. Walsh, Civil

No. 1:11-CV-2223. (Doc. 150.)  That motion for extension of time was *granted* by the district court, and McMillian was provided the opportunity to file a brief opposing this summary judgment motion on or before January 24, 2014. <u>McMillian v. Walsh</u>, Civil No. 1:11-CV-2223 (Doc. 151.) McMillian then ignored this deadline, and failed to comply with the extended filing deadline which he sought and obtained from the court. In the wake of this failure by McMillian, on January 28, 2014, the district court adopted the Report and Recommendation and dismissed McMillian's complaint. <u>McMillian v. Walsh</u>, Civil No. 1:11-CV-2223 (Docs. 153 and 154.) Like our Report and Recommendation, the district court's opinion expressly and carefully considered the merits of McMillian's claims and found that those claims failed as a matter of law. (<u>Id</u>.)

Thus, it is against this backdrop, which demonstrates that McMillian's claims in <u>McMillian v. Walsh</u>, Civil No. 1:11-CV-2223 failed due to a total lack of merit, that we consider the instant complaint which seeks to blame the failure of McMillian's prior lawsuit upon the Acting Clerk of Court.

**II.    <u>Discussion</u>**

**A.    <u>Screening of *Pro Se* Complaints–Standard of Review</u>**

This Court has a statutory obligation to conduct a preliminary review of *pro se* complaints brought by plaintiffs given leave to proceed *in forma pauperis* in cases which  seek redress against government officials. <u>See</u> 28 U.S.C. § 1915(e)(2)(B)(ii).

Specifically, when reviewing *in forma pauperis* complaints, 28 U.S.C. §

1915(e)(2)(B)(ii) specifically enjoins us to "dismiss the complaint at any time if the

court determines that . . . the action . . . fails to state a claim upon which relief may be

granted." In addition, we are obliged to review prisoners' complaints pursuant to 28

U.S.C. § 1915A which provides, in pertinent part:

> **(a) Screening**. - The court shall review, before docketing, if feasible or,
> in any event, as soon as practicable after docketing, a complaint in a civil
> action in which a  prisoner seeks redress from a governmental entity or
> officer or employee of a governmental entity.

> **(b) Grounds for dismissal**. - On review, the court shall identify
> cognizable claims or dismiss the complaint, or any portion of the
> complaint, if the complaint-

> (1) is frivolous, malicious, or fails to state a claim upon which relief may
> be  granted; or

> (2) seeks monetary relief from a defendant who is immune from such
> relief.

 This statutory text mirrors the language of Rule 12(b)(6) of the Federal Rules of Civil

Procedure, which provides that a complaint should be dismissed for "failure to state

a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).

With respect to this benchmark standard for legal sufficiency of a complaint, the

United States Court of Appeals for the Third Circuit has aptly noted the evolving

standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in
> recent years. Beginning with the Supreme Court's opinion in <u>Bell Atlantic</u>

Corp. v. Twombly, 550 U.S. 544 (2007) continuing with our opinion in Phillips [v. County of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008)]and culminating recently with the Supreme Court's decision in Ashcroft v. Iqbal –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

Fowler v. UPMC Shadyside, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the Court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. Jordan v. Fox Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged." Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id.

In keeping with the principles of <u>Twombly</u>, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u> at 678. Rather, in conducting a review of the adequacy of complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

<u>Id.</u> at 679.

Thus, following <u>Twombly</u> and <u>Iqbal</u> a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a complaint must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter <u>Iqbal,</u> when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to

show that the plaintiff has a "plausible claim for relief." In other words,
a complaint must do more than allege the plaintiff's entitlement to relief.
A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

As the court of appeals has also observed: "The Supreme Court in Twombly set forth the 'plausibility' standard for overcoming a motion to dismiss and refined this approach in Iqbal. The plausibility standard requires the complaint to allege 'enough facts to state a claim to relief that is plausible on its face.' Twombly, 550 U.S. at 570, 127 S.Ct. 1955. A complaint satisfies the plausibility standard when the factual pleadings 'allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' Iqbal, 129 S.Ct. at 1949 (citing Twombly, 550 U.S. at 556, 127 S.Ct. 1955). This standard requires showing 'more than a sheer possibility that a defendant has acted unlawfully.' Id. A complaint which pleads facts 'merely consistent with' a defendant's liability, [ ] 'stops short of the line between possibility and plausibility of "entitlement of relief." ' " Burtch v. Milberg Factors, Inc., 662 F.3d 212, 220-21 (3d Cir. 2011) cert. denied, 132 S. Ct. 1861, 182 L. Ed. 2d 644 (U.S. 2012).

In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis: "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Iqbal, 129 S.Ct. at 1947. Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of

truth.' Id. at 1950. Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.' Id." Santiago v. Warminster Tp., 629 F.3d 121, 130 (3d Cir. 2010).

In addition to these pleading rules, a civil complaint must comply with the requirements of Rule 8(a) of the Federal Rule of Civil Procedure which defines what a complaint should say and provides that:

> (a) A pleading that states a claim for relief must contain (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Thus, a well-pleaded complaint must contain more than mere legal labels and conclusions.  Rather, a *pro se* plaintiff's complaint must recite factual allegations which are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action.

In undertaking this task, the court generally relies only on the complaint, attached exhibits, and matters of public record. Sands v. McCormick, 502 F.3d 263, 268 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attached as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are

alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." <u>Pryor v. Nat'l Collegiate Athletic Ass'n</u>, 288 F.3d 548, 560 (3d Cir. 2002); <u>see also, U.S. Express Lines, Ltd. v. Higgins</u>, 281 F.3d382, 388 (3d Cir. 2002) (holding that "[a]lthough a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss in one for summary judgment.") Therefore, we can–and should–consider the undisputed court record in <u>McMillian v. Walsh</u>, Civil No. 1:11-CV-2223 when assessing the legal merits of the instant complaint.

### B.      <u>McMillian Has Not Stated a Denial of Access to Courts Claim</u>

Judged against these standards, McMillian's complaint completely fails to state a viable constitutional claim of denial of access to the courts. Since 1977, the United States Supreme Court has recognized that inmates have a constitutional right of access to the courts. <u>Bounds v. Smith</u>, 430 U.S. 817 (1977). As the Supreme Court initially observed, this right of access to the courts is satisfied when corrections officials facilitate "meaningful" access for those incarcerated, either through legal materials or the assistance of those trained in the law. <u>Id</u>. at 827 ("[T]he fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law.")

Two decades later, in 1996, the Supreme Court provided further definition and guidance regarding the scope and nature of this right of access to the courts in <u>Lewis v. Carey</u>, 518 U.S. 343 (1996). In <u>Lewis</u>, the Court eschewed efforts to define this right in abstract, or theoretical terms, but rather cautioned courts to focus on concrete outcomes when assessing such claims. As the Court observed:

> Because <u>Bounds</u> did not create an abstract, freestanding right to a law library or legal assistance, an inmate cannot establish relevant actual injury simply by establishing that his prison's . . .  legal assistance program is subpar in some theoretical sense. . . .  Insofar as the right vindicated by <u>Bounds</u> is concerned, "meaningful access to the courts is the touchstone," <u>id.</u>, at 823, 97 S.Ct., at 1495 (internal quotation marks omitted), and the inmate therefore must go one step further and demonstrate that the alleged shortcomings in the  . . . legal assistance program hindered his efforts to pursue a legal claim. . . . . Although Bounds itself made no mention of an actual-injury requirement, it can hardly be thought to have eliminated that constitutional prerequisite. And actual injury is apparent on the face of almost all the opinions in the 35-year line of access-to-courts cases on which <u>Bounds</u> relied, <u>see id.</u>, at 821-825, 97 S.Ct., at 1494-1497. Moreover, the assumption of an actual-injury requirement seems to us implicit in the opinion's statement that "we encourage local experimentation" in various methods of assuring access to the courts. <u>Id.</u>, at 832, 97 S.Ct., at 1500.

<u>Lewis v. Casey</u>, 518 U.S. 343, 351-52 (1996).

Thus, following <u>Lewis</u> courts have consistently recognized two guiding principles which animate access-to-court claims by prisoners. First, such claims require some proof of an actual, concrete injury, in the form of direct prejudice to the plaintiff in the pursuit of some legal claim. <u>See, e.g., Oliver v. Fauver</u>, 118 F.3d 175 (3d Cir. 1997); <u>Demeter v. Buskirk</u>, No. 03-1005, 2003 WL 22139780 (E.D. Pa. Aug. 27,

2003); Castro v. Chesney, No. 97-4983, 1998 WL 150961 (E.D. Pa. March 31, 1998). Furthermore, in order to bring a claim based upon the right of access to the courts, inmates must claim "(1) that they suffered an actual injury—that they lost a chance to pursue a non-frivolous or arguable underlying claim; and (2) that they have no other remedy that may be awarded as recompense for the lost claim other than in the present denial of access suit." Monroe v. Beard, 536 F.3d 198, 205 (3d Cir.2008) (quoting Christopher v. Harbury, 536 U.S. 403, 415, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002)) (internal quotations omitted). Thus, in order to state a claim upon which relief may be granted an inmate-plaintiff's complaint must "describe the underlying arguable claim well enough to show that it is 'more than mere hope,' and it must describe the 'lost remedy.' " Monroe, 536 F.3d at 205–06 (quoting Christopher, 536 U.S. at 416–17). Therefore, it is well-settled that the lack of a meritorious underlying claim precludes a plaintiff from subsequently pursuing a constitutional denial of access to courts claim. See, e.g., Prater v. City of Philadelphia, 542 F. App'x 135, 137 (3d Cir. 2013); Allen v. Ripoll, 150 F. App'x 148, 150 (3d Cir. 2005).

Judged by these legal yardsticks, in this case, McMillian's access to courts claim fails as a matter of law for at least two reasons. First, McMillian has not identified "an underlying arguable claim well enough to show that it is 'more than mere hope,' and it must describe the 'lost remedy.' " Monroe, 536 F.3d at 205–06. Quite the contrary, we have found that McMillian's underlying claims were completely

devoid of merit  and could, therefore, only be described as a "mere hope" that was utterly lacking in legal and factual merit.

Furthermore, on these facts, McMillian cannot show that his access to the courts was impeded in any meaningful way by the clerk's alleged failure to file a pleading in November 2013.  Quite the contrary, after McMillian failed to meet his November 2013 filing deadline, and after our Report and Recommendation was submitted, on December 23, 2013, McMillian belatedly filed a motion for an extension of time in which to respond to this summary judgment motion.  McMillian v. Walsh, Civil No. 1:11-CV-2223 (Doc. 150.) That motion was *granted* by the district court, and McMillian was provided the opportunity to file a brief opposing this summary judgment motion on or before January 24, 2014.  McMillian v. Walsh, Civil No. 1:11-CV-2223 (Doc. 151.) This action by the district court gave McMillian precisely what he claims he was denied, a meaningful opportunity to oppose this dispositive motion, and completely cured any potential prejudice to McMillian that could have arisen due to any alleged failure to accept his prior pleadings. However, it is undisputed that McMillian then ignored this deadline, and failed to comply with the extended filing deadline which he sought and obtained from the court. It was only in the wake of this failure by McMillian that, on January 28, 2014, the district court adopted the Report and Recommendation and dismissed McMillian's complaint.  McMillian v. Walsh, Civil No. 1:11-CV-2223 (Docs. 153 and 154.) On these fact, which are entirely

uncontested, it cannot be said that McMillian lost a legal remedy due to any action by

the clerk's office in November 2013, as he alleges. Rather, that remedy was lost and

forfeited by McMillian in January of 2014 through his own inaction when he ignored

yet another filing deadline after the court granted his request for an extension of time.

### C.    The Plaintiff's Claim for A Specific Amount of Unliquidated Damages is Improper

Further, we note that the demand for specified compensatory damages from the

defendants in the amount of $500,000 is inappropriate. Rule 12(f) of the Federal Rules

of Civil Procedure imposes a duty on the Court to review pleadings and provides that

the Court may upon its own initiative at any time order stricken from any pleading any

immaterial matter. Fed. R. Civ. P. 12(f).   Decisions regarding whether claims may be

stricken from a complaint are properly presented to a United States Magistrate Judge

for determination in the first instance. Singh v. Superintending School Committee of

the City of Portland, 593 F. Supp. 1315 (D. Me. 1984). In this case, the plaintiff's

claim for a specified amount of unliquidated damages violates Local Rule 8.1 which

provides, in part, that: " The demand for judgment required in any pleading in any civil

action pursuant to Fed.R.Civ.P. 8(a)(3) may set forth generally that the party claiming

damages is entitled to monetary relief *but shall not claim any specific sum where*

*unliquidated damages are involved.* The short plain statement of jurisdiction, required

by Fed.R. Civ.P.8(a)(1), shall set forth any amounts needed to invoke the jurisdiction

of the court but no other." Local Rule 8.1 (emphasis added). Since this prayer for relief violates Local Rule 8.1 by specifying a particular amount of unliquidated damages, it is further recommended that this specific dollar claim be stricken from the complaint.

### D.   This Complaint Should Be Dismissed With Prejudice.

While civil rights *pro se* plaintiffs often should be afforded an opportunity to amend a complaint before the complaint is dismissed in its entirety, see Fletcher-Hardee Corp. v. Pote  Concrete Contractors, 482 F.3d 247, 253 (3d Cir. 2007), dismissal with leave to amend is not necessary when granting further leave to amend would be futile or result in undue delay. Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). Here the structural flaws in this complaint are beyond any form of repair. Nothing can change the immutable fact that McMillian lost his prior lawsuit, McMillian v. Walsh, Civil No. 1:11-CV-2223, on its merits and not due to some denial of access to the courts. Moreover, no amount of artful pleading can escape the simple truth that McMillian was granted an extension of time in which to file an opposition to this the summary judgment motion in McMillian v. Walsh, Civil No. 1:11-CV-2223 *after* he alleges that his opposition was refused for filing by the clerk in November 2013. Finally, no amended complaint can change the stark reality that McMillian then chose to ignore that extended filing deadline as well, and thus forfeited the opportunity to respond through his inaction.  Therefore, on these facts, granting further leave to

amend would, in our view, be futile. Accordingly, this complaint should be dismissed without any further leave to amend.

### III.   <u>Recommendation</u>

Accordingly, for the foregoing reasons, the Plaintiff's motion for leave to proceed *in forma pauperis* is GRANTED (Doc. 6), but IT IS RECOMMENDED that the Plaintiff's complaint be dismissed with prejudice.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen  (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified  proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 11th day of June, 2014.

*S/Martin C.  Carlson*
Martin C. Carlson
United States Magistrate Judge